## CHICOT COUNTY *v.* SHERWOOD.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
EASTERN DISTRICT OF ARKANSAS.

No. 170. Submitted March 24, 1893. — Decided April 3, 1893.

An action will lie in a Circuit Court of the United States in the State of Arkansas at the suit of a citizen of New York, against a county in Arkansas, to recover on bonds and coupons issued by the county to aid in the construction of a railroad and held by the citizen of New York, notwithstanding the provisions in the act of the Legislature of Arkansas of February 27, 1879, repealing all laws authorizing counties within the State to be sued; requiring all demands against them to be presented to the County Courts of the several counties for allowance or rejection; and allowing appeals to be prosecuted from the decisions of those courts.

An answer to a declaration on such bonds and coupons setting out the statutory provisions under which the bonds were issued and averring that the election under which they were claimed to have been authorized was not a free and fair election but was a sham "as shown by papers filed with the county clerk," and reciting various irregularities which were alleged to appear "by reference to certified copies of the papers sent into the clerk's office" from some of the various precincts of the county, and concluding "and so the county says that there was in fact no election held in said county on February 27, 1872, to determine whether or not the county would subscribe to the capital of said railroad company and issue bonds to pay the same" presents no issuable question of fact, going to the merits of the suit, and if demurred to, the demurrer should be sustained.

While matters of fact, well pleaded, are admitted by a demurrer, conclusions of law are not so admitted.

THE case is stated in the opinion.

*Mr. D. H. Reynolds* for plaintiff in error.

No appearance for defendants in error.

MR. JUSTICE JACKSON delivered the opinion of the court.

This was an action by the defendants in error, citizens of the State of New York, against Chicot County, Arkansas, upon 17 bonds and 80 interest warrants or coupons thereto attached, forming a portion of an issue of bonds made and executed by that county, in 1872, for the amount of a stock subscription made by it to the Mississippi, Ouachita and Red

River Railroad Company. The bonds and coupons sued on were in the following form: .

"UNITED STATES OF AMERICA, *State of Arkansas.*
"No. 3.                                            $500.

"It is hereby certified that the county of Chicot is indebted unto and will pay the Mississippi, Ouachita and Red River Railroad Company or bearer, on the first day of January, 1887, five hundred dollars, lawful money of the United States of America, with interest at the rate of six per centum per annum, payable semi-annually, on the first days of January and July of each year, at the Union Trust Company, in the city of New York, on the presentation and surrender of the proper coupon hereto annexed. This bond is one of a series of two hundred, numbered from one to two hundred, inclusively, of like date, tenor and amount, issued under an act of the general assembly of the State of Arkansas, entitled 'An act to author-. ize counties to subscribe stock in railroads,' approved July 23, 1868, and in obedience to the vote of the people of said county, at an election held in accordance with the provisions of said act, authorizing the subscription of one thousand dollars to the capital stock of said railroad company.

"In witness whereof, the said county has caused to be affixed hereto its seal, and has caused the same to be attested by the signature of its county and probate judge, countersigned by the signature of its county clerk, who also signs the coupons hereto annexed, at their office, in said county, this 11th day of May, 1872.              JAS. W. MASON,
                                     "*County and Probate Judge.*
"M. W. GRAVES, *County Clerk.*
"Receivable in payment of all county taxes. .

"STATE OF ARKANSAS:

"The treasurer of the county of Chicot will pay fifteen dollars to bearer at the office of the Union Trust Company, in the city of New York, on the first day of January, 1887, being amount — interest on bond No. 3.

                      "M. W. GRAVES, *County Clerk.*"

Judgment was rendered in favor of the plaintiffs for the amount of the bonds and coupons sued on, and the county prosecutes this writ of error therefrom, assigning as grounds of reversal, first, that the Circuit Court had no jurisdiction to entertain the suit, and, secondly, that said court erred in sustaining the plaintiffs' demurrer to the plea or answer of the county, and in rendering judgment against it, upon its declining to make further answer in bar or defence of the action.

After being summoned in the usual manner the defendant moved to dismiss the suit on the grounds that, since the passage of an act of the legislature of Arkansas, on February 27, 1879, Gannt's Dig. (1884), 350, repealing all laws authorizing counties in the State to sue and be sued, the county could not be sued or proceeded against in any court, state or federal, by complaint and summons, or otherwise than in the manner provided by said act; that the county had not been brought into the Circuit Court in any manner authorized by law, so as. to acquire jurisdiction over the same; that the plaintiffs had not presented their demand to the county court of Chicot County, duly verified according to the requirements of the statute, for *allowance* or *rejection*, and that without such verification and demand no case against, or controversy with, the county could arise of which any state or federal court could take cognizance or jurisdiction. The second section of the act of February 27, 1879, on which this motion was based, provided " that hereafter all persons having *demands* against any county shall present the same, duly verified according to law, to the county court of such county for *allowance* or *rejection.* From the order of the county court therein, appeals may be prosecuted as now provided by law. If in any appeal the *judgment* of the county court is reversed the judgment of reversal shall be certified by the court rendering the same to the county court, and the county court shall thereupon enter the judgment of the superior court as its own."

The Circuit Court overruled this motion to dismiss the suit, and this action of the court constitutes the first error relied on for reversal of its judgment. It is claimed for plaintiff in error that, inasmuch as the courts of general jurisdiction in Arkansas

have no original jurisdiction to hear and determine cases like the present, since the passage of said act of February 27, 1879, the courts of the United States can exercise no such jurisdiction. In the case of *Nevada County* v. *Hicks*, 50 Arkansas, 416, 420, it was said by the Supreme Court of Arkansas that, " whilst it is true, by the act of February 27, 1879, counties cannot be sued, in the ordinary way of bringing suits, still *judgments* may be and are rendered against them. *Every allowance of a claim* by *the county* is a *judgment;* and, unquestionably, when an appeal is prosecuted from the action of the county court in allowing or rejecting a claim, the decision of the appellate court is a judgment; and when the judgment of the county court is reversed the judgment of reversal, when certified to the county court, is required to be entered as the judgment of the county court."

If, under this construction of the act, the allowance or rejection by the county court of any demand against the county, duly verified according to law, has the force and effect of a judgment for or against the county, from which an appeal will lie, it would seem that the making or presenting a demand against the county to the county court is, to all intents and purposes, such a legal proceeding as would permit the application of the rule which plaintiff in error invokes to defeat the jurisdiction of the federal court; for in the case of *Gaines* v. *Fuentes*, (92 U. S. 10, 20,) cited and relied on to support its position, it is said, " if by the law obtaining in the State, customary or statutory, they [suits] can be maintained in a state court, whatever designation that court may bear, we think they may be maintained by original process in a federal court where the parties are, on one side, citizens of Louisiana and, on the other, citizens of other States."

If, however, the presentation of a demand against the county, duly verified, according to law, to the county court thereof, "*for allowance* or *rejection*" is not the beginning of a suit or does not involve a trial *inter partes*, it is *then* only a preliminary proceeding to a suit or controversy which, by the appeal of either side, is or may be carried to an appellate court, before which there is an actual trial between the parties inter-

ested. The right to maintain this revisory trial in the state court, even under the principle contended for, will be sufficient to maintain a like suit by original process in a federal court where the requisite diverse citizenship exists. In *Delaware County* v. *Diebold Safe Co.*, 133 U. S. 473, 486, 487, Mr. Justice Gray, speaking for this court, and commenting upon a somewhat similar statutory provision, said : " It was also objected that the petition for removal was filed too late, after the case had been tried and determined by the board of county commissioners. But, under the statutes of Indiana then in force, although the proceedings of county commissioners in passing upon claims against a county are in some respects assimilated to proceedings before a court, and their decision, if not appealed from, cannot be collaterally drawn in question, yet those proceedings are in the nature, not of a trial *inter partes*, but of an allowance or disallowance, by officers representing the county, of a claim against it. At the hearing before the commissioners there is no representative of the county, except the commissioners themselves ; they may allow the claim, either upon evidence introduced by the plaintiff, or without other proof than their own knowledge of the truth of the claim; and an appeal from this decision is tried and determined by the circuit court of the county as an original cause, and upon the complaint filed before the commissioners. . . . It follows, according to the decisions of this court in analogous cases, that the trial in the circuit court of the county was ' the trial' of the case, at any time before which it might be removed into the Circuit Court of the United States under clause 3 of section 639 of the Revised Statutes."

If, therefore, the presentation of a demand to the county court under the Arkansas statute is not the commencement of a suit against the county, then, under the rule stated in *Delaware County* v. *Diebold Safe Co.*, just quoted, the court to which such demand may be carried after allowance or rejection receives and determines it as an *original cause.* In either case the suit is so maintainable in the state courts as to be cognizable by original process in a federal court, where the parties have the proper citizenship to confer jurisdiction. Any other

view of the subject would prevent citizens of other States from resorting to the federal courts for the enforcement of their claims against counties of the State, and limit them to the special mode of relief prescribed by the act of February 27, 1879. The jurisdiction of the federal courts is not to be defeated by such state legislation as this. In *Hyde* v. *Stone*, 20 How. 170, 175, it is said: "But this court has repeatedly decided that the jurisdiction of the courts of the United States over controversies between citizens of different States cannot be impaired by the laws of the States, which prescribe the modes of redress in their courts, or which regulate the distribution of their judicial power. In many cases state laws form a rule of decision for the courts of the United States, and the forms of proceeding in these courts have been assimilated to those of the States, either by legislative enactment or by their own rules. But the courts of the United States are bound to proceed to judgment and to afford redress to suitors before them in every case to which their jurisdiction extends. They cannot abdicate their authority or duty in any case in favor of another jurisdiction. *Suydam* v. *Broadnax*, 14 Pet. 67; *Union Bank* v. *Jolly's Administrators*, 18 How. 503." This principle has been steadily adhered to by this court.

In the case under consideration the state statute relied on to defeat the jurisdiction of the United States Circuit Court was passed after the bonds sued on were issued and put in circulation, and if its requirement of presenting the bonds to the county court of Chicot County "for allowance or rejection" was binding upon citizens of other States holding such bonds, it would present a very grave question whether it was not such a substantial and material change in the remedy in force when the contract was made, as to impair its obligations. But it is not necessary to consider and determine that question, as the objection to the jurisdiction of the Circuit Court, for the reasons already stated, is not well taken.

The second-assignment of error is to the action of the Circuit Court in sustaining the demurrer to the answer of the county. The answer, after setting out the constitutional and statutory provisions of the State, under which the county was authorized

to issue the bonds in question, and the proceedings of the county court in reference to the submission of the question of subscribing $100,000 to the capital stock of the railroad company, and the election had thereunder by the people of the county, together with the result of the vote, which, according to the returns, as ascertained and found by the county court, showed a majority of 320˙ votes in favor of the county making the subscription, proceeds to set forth a mass of irrelevant matter, such as the occurrence of a riot at a former election; the occupation of the county-seat by a force of state troops to protect life and property when the order for the election under which the subscription voted was made, and continued so occupied till after the election; and alleges "that a condition of affairs existed in the county that precluded a free and fair election, and the veriest sham of an election was held at some of the various precincts on February 17, 1872, (the day of the election,) *as shown by papers filed with the county clerk*, and which upon their face show that there was not a legal election at any precinct in the county of Chicot on said February 17, 1872, and that no poll-books were furnished to the several precincts as required by law"; together with various other recited irregularities, alleged to be shown by papers filed, but by whom filed is not averred; nor is it stated how, or in what way, as matter of fact, such irregularities affected the vote actually cast and counted, on which the subscription was carried.    After a recital of these matters, which, it is said, appear "by *reference to certified copies of the papers* sent into the clerk's office from some of the various precincts in the county," numerous papers are marked as exhibits and made part of the answer, and from which is drawn the conclusion set up in the answer, as follows: "And so the county says that there was in fact no election held in said county on February 27, 1872, to determine whether or not the county would subscribe to the capital of said railroad company and issue bonds to pay the same."

It is further averred in the answer that the county court was not the proper tribunal to determine whether an election had been held in pursuance of the statute regulating the mat-

ter; that the false recitals on the face of the bonds, to the contrary, did not estop the county; that the terms and conditions of the order submitting the question of subscription to a vote of the people were not complied with, so that the county was not legally bound to pay the bonds or any part thereof; and that the railroad company had delivered the stock to the county court before the election was held, and, after said election, had obtained the bonds illegally and fraudulently, etc. The answer also sets out proceedings had in the county court *after* the bonds were issued, and reports made to it in relation thereto, which are made exhibits to the answer, and which, it is claimed, show that the bonds were not issued in conformity to law.

To this answer there was interposed a demurrer, which was sustained, and the county electing to stand on its answer, and say nothing further in bar of the plaintiffs' right to recover, judgment was thereupon rendered in favor of the plaintiffs, for the amount of the bonds and coupons sued on, with interest and costs of suit.

It is urged by the plaintiff in error that this action of the lower court was erroneous, for the reason that the answer set forth sufficient facts to invalidate the bonds within the rule laid down in *Dixon County* v. *Field*, 111 U. S. 83, 92, 93. We do not take this view of the answer. It abounds in recitals, in statements of what papers made exhibits thereto purport to show, and in conclusions of law, which are not admitted by the demurrer, the rule being well settled that only matters of *fact* well pleaded are admitted by a demurrer, while conclusions of law are not. *United States* v. *Ames*, 99 U. S. 35, 45; *Interstate Land Co.* v. *Maxwell Land Grant Co.*, 139 U. S. 569, 578.

The answer was of such a character as to present no issuable questions of fact going to the merits of the suit, and was properly demurred to, and there was no error in sustaining the demurrer.

Our conclusion is, that the judgment should be

*Affirmed.*