### CITY OF MEMPHIS, TENNESSEE v. INGRAM et al.

No. 14443.

United States Court of Appeals Eighth Circuit.

April 2, 1952.

Rehearing Denied April 25, 1952.

Kenneth C. Larkey and F. B. Gianotti, Jr., Memphis, Tenn. (Wils Davis, Memphis, Tenn. on the brief), for appellant.

John A. Fogleman, Marion, Ark. (Hale & Fogleman, Marion, Ark., on the brief), for appellees.

Before SANBORN, WOODROUGH and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This is an appeal by the plaintiff in the district court from a judgment dismissing the complaint for want of jurisdiction.

The complaint alleges that the City of Memphis is a municipal corporation located on the east side of the Mississippi river in Shelby County, Tennessee. The defendant W. K. Ingram is the county judge of Crittenden County, Arkansas, which is situated on the west side of the Mississippi river opposite the city of Memphis. The Arkansas and Memphis Railway Bridge and Terminal Company, hereinafter called the Bridge Company, is a Tennessee corporation.

The Mississippi river is a navigable stream and forms the boundary line between Arkansas and Tennessee. The construction of bridges across the Mississippi river at Memphis is governed by 33 U.S. C.A. §§ 491–498 as amended.

By an Act of Congress, July 20, 1912, 37 U.S.Stat., p. 195, amended by Act of August 23, 1912, 37 U.S.Stat. p. 359, the Bridge Company was "authorized to construct, maintain, and operate a bridge, and all approaches thereto, across the Mississippi River at Memphis, Tennessee, * * * Provided, That said bridge shall be so constructed, maintained, and operated that, in addition to its use for railroad purposes, it shall provide for an adequate and a separate roadway and approaches and continuous use by the public as a highway bridge, to be used by vehicles, pedestrians, horsemen, animals, and all kinds of highway traffic and travel * * *." Section 2 provided that the Bridge Company should not be required to construct the approaches for vehicles until local interests provided the sum of $50,000. Section 3 provided that the company should have the right to sell and transfer to any county, city, improvement district, or municipality any part or all of the separate roadway and the approaches thereto, and that in case of such sale the Bridge Company should be relieved of any requirement to maintain the property so sold.

The bridge was thereafter constructed. It is known as the Harahan Bridge.

On August 25, 1917, the Bridge Company sold and transferred to the city of Memphis that part of the double wagonway attached to the sides of the bridge in Shelby county, Tennessee, and to Crittenden county, Arkansas, that part of such roadway in Arkansas, for the consideration of $25,000 and $40,000 respectively. The indenture of conveyance to Crittenden county provided among other things "that it shall not only be the right, but likewise the duty of the said Crittenden County, or its assigns, to repair any portion of said wagonway, herein conveyed, which may break or wear out, and to replace such broken or worn out portions by new parts or material; it being

the sole duty of said Crittenden County to take care of and maintain said premises herein conveyed."

Prior to the execution of these conveyances the Bridge Company and the parties had entered into an agreement on October 27, 1916, providing that after the transfers were made the Bridge Company would no longer be required to maintain the roadways, "but [they] will be maintained by the City of Memphis and the County of Crittenden, * * * and said first party will be relieved of any further responsibility therefor * * *."

In 1926 the parties agreed that certain improvements should be made in connection with the wagonways and the approaches thereto to which the city of Memphis contributed $369,000.

In 1928 a portion of the roadway attached to the bridge in Tennessee was destroyed by fire, and on August 9, 1928, the Bridge Company, the City of Memphis and Crittenden County provided for reconstruction of the part destroyed and for the widening of the roadway.

It was further alleged that the defendants were threatening to dismantle and destroy that part of the wagonways attached to the bridge in Arkansas, and a mandatory injunction was demanded requiring the defendants to take all necessary steps to protect the continuous operation of the bridge and the roadways attached thereto and upon final hearing to make the injunction permanent.

Jurisdiction was alleged under 28 U.S.C. A. § 1331 and § 1332, that is, as an action wherein the matter in controversy exceeds the sum of $3,000 exclusive of interest and costs and arises under a law of the United States and is between citizens of different states. The original complaint alleged that "If the defendants are not enjoined, and if said roadways in Crittenden County, Arkansas, attached to said Harahan Bridge are demolished, the plaintiff City of Memphis will be irreparably injured and damaged, and the actual damages will be far in excess of the sum of Three Thousand ($3,000.00) Dollars, exclusive of interest and costs."

Thereafter the action was dismissed by the plaintiff against the Bridge Company.

The defendants W. K. Ingram and Crittenden County filed an answer alleging: 1. That the complaint fails to state a claim against them upon which relief can be granted; 2. That original jurisdiction over the subject matter is vested in the County Court of the defendant County; that the amount in controversy is less than $3,000; that the cause of action does not arise under the laws of the United States; and 3. Deny the material allegations of the complaint and pray that it be dismissed.

The court took evidence for two days and dismissed the complaint for want of jurisdiction on the grounds that (1) the federal question alleged is not substantial; (2) there is no sufficient allegation of the amount in controversy and no evidence as to what the amount is; and (3) the suit to enjoin the action of the county court of Crittenden County is a collateral attack on the judgment of the county court and that judgment is not subject to collateral attack.

The defendant W. K. Ingram testified that, as Chief Administrative Officer of Crittenden County, Arkansas, he intended to dismantle those portions of the Harahan vehicular roadways within the state of Arkansas, and that as judge of the Crittenden County court he had entered an order of the court authorizing the dismantling of the same and the salvage of the materials therefrom, and authorizing a contract with the Highway Department of the state of Arkansas pertaining thereto.

The contracts and statutes referred to above were introduced in evidence. Engineers testified on behalf of the plaintiff that they were familiar with the Harahan bridge, its construction and its condition; that if Crittenden County, Arkansas, should dismantle and demolish those portions of the roadways lying within the state of Arkansas, it would be imperative that the city of Memphis demolish and dismantle those portions of the roadways lying in the state of Tennessee; that the reasonable cost of dismantling those parts in Tennessee would be $150,000, which would be at least $50,000 more than the value of

the salvage; that the wooden parts of the roadways are in need of some repairs, but that they are in reasonably good condition and would safely accommodate the natural traffic using them.

The evidence showed also that a new four-way vehicular bridge has been constructed over the river only a comparatively short distance from the Harahan bridge and that all state highways have been routed over the new bridge. Witnesses for the defendants testified, also, that the runways on the Harahan bridge are dangerous to traffic.

Other matters were introduced in evidence, but they are not material on the issues on appeal. The record contains no findings of fact by the district court, and only legal questions are presented here.

We shall first consider the contention that this suit is a collateral attack on a judgment of the county court of Crittenden County, Arkansas. The "judgment" referred to is the order entered by the defendant county judge Ingram ordering the demolition of that part of the Harahan bridge in Crittenden county, Arkansas. Reliance in support of the decision of the district court is based upon the decision of the Supreme Court of Arkansas in Sailer v. State, 192 Ark. 514, 92 S.W.2d 382, 384, wherein the court say:

"We have repeatedly held that a county court acting within the powers conferred by the Constitution and statutes of the state is a court of superior jurisdiction and such powers judicially exercised are not subject to collateral attack."

It is clear to us that this statement plainly shows that this suit is not a collateral attack on the order in question. It is true that the county courts in Arkansas have jurisdiction over the roads and bridges within the county; but, if this jurisdiction extends to valid contracts relating to bridges across and over state lines which are the subjects of such contracts, as in this case between the county and non-residents of the state of Arkansas, then the county court does not "judicially exercise" its powers in making such an order without notice to the other party to the contract with an opportunity for a hearing on the right to destroy. The county here owned but a part of the bridge, and the plaintiff owned a part thereof. The owners had entered into valid and binding contracts with each other and with the Bridge Company, all as shown above, to maintain the roadways of the bridge continuously open for the use of the public. The county court clearly exceeded its jurisdiction in entering the order in question without notice to the city of Memphis. And, "Of course a judgment void ab initio is also void, and may be so declared on collateral attack." Bragg v. Thompson, 177 Ark. 870, 9 S.W.2d 24, 25; Lambert v. Reeves, 194 Ark. 1109, 110 S. W.2d 503, 112 S.W.2d 33.

We shall next consider whether the matter in controversy exceeds the sum or value of $3,000 exclusive of interest and costs as required by 28 U.S.C.A. § 1332 to confer jurisdiction upon the federal court in diversity of citizenship cases. The trial court was persuaded that there was "no sufficient allegation of the amount in controversy and no evidence as to what that amount is." The court, citing authorities, concluded that "the amount in controversy" is "the amount or value of the right which the complainant seeks to protect from invasion, or of the object to be gained by the bill." Citing Local No. 7 of Bricklayers, etc., Union v. Bowen, D.C., 278 F. 271, 273. See, also, Zicos v. Dickmann, 8 Cir., 98 F.2d 347. And the court determined that this suit is to "protect the continuous operation of said roadways to the Harahan Bridge for use and benefit of the citizens of Memphis."

The court copied the foregoing object of the suit from the complaint. And the complaint charged that "if the defendants are not enjoined, and if said roadways in Crittenden County, Arkansas, attached to said Harahan Bridge are demolished, the plaintiff City of Memphis will be irreparably injured and damaged, and the actual damages will be far in excess of the sum of Three Thousand ($3,000.00) Dollars, exclusive of interest and costs."

The undisputed proof showed that the roadways originally cost the city of Mem-

phis and Crittenden county $65,000, of which the city contributed $25,000, and that thereafter the city contributed $369,000 for the improvement of the bridge and the approaches thereto; and it is self-evident that if the defendant destroys that part of the roadways in Arkansas the remaining part thereof in Tennessee will be rendered useless. The evidence also shows that the cost of dismantling the plaintiff's end of the roadways would be approximately $150,-000, whereas the salvage would be much less than that amount.

■ Certainly the allegations and the proof are sufficient to show that the amount in controversy is in excess of $3,000 exclusive of interest and costs. As early as 1900 the Supreme Court in Wheless v. St. Louis, 180 U.S. 379, 382, 21 S.Ct. 402, 403, 45 L.Ed. 583, said: "The 'matter in dispute' within the meaning of the statute is not the principle involved, but the pecuniary consequence to the individual party, dependent on the litigation * * *."

And this rule was quoted and followed by the Supreme Court as late as 1941 in Thomson v. Gaskill, 315 U.S. 442, 447, 62 S.Ct. 673, 86 L.Ed. 951.

■■ It is true that such an injury as the one here complained of is not capable of exact valuation in money. But this does not negative federal jurisdiction. It is not necessary that the complaint should contain exact affirmative allegations of value. To justify dismissal when there is an adequate formal allegation of an amount in controversy sufficient to confer jurisdiction, it must appear to a legal certainty from the rest of the complaint that the claim is in fact for less than the jurisdictional amount. Food Fair Stores v. Food Fair, 1 Cir., 177 F.2d 177.

It is our conclusion that the court erred in holding that it was without jurisdiction on the ground that there was no sufficient allegation of the amount in controversy and no evidence as to such amount to confer jurisdiction on the ground of diversity of citizenship, the parties being citizens of different states. We do not, therefore, consider the question whether jurisdiction ex-

isted under § 1331 of Title 28 of the Judicial Code.

The defendants in their brief assert that this "action is, in effect, an action against the State of Arkansas, of which the District Court has no jurisdiction."

This point was not urged in the district court, and it was not referred to in the court's opinion and decision. Neither was the point argued upon oral submission to this court. However, the court called it to the attention of counsel, and supplemental briefs have been filed by the parties thereon.

The argument, in brief, is that the defendant Crittenden county is a political subdivision of the state of Arkansas and a part of the state government and is included in the term "State"; that the roadways in question are a part of the State Highway System under the control of the State Highway Commission, which Commission had the discretion to determine the route and location of the road system, and the courts will not interfere with that discretion; and that the action of the Highway Commission and the county court of Crittenden county, Arkansas, constituted state action, wherefore the present action is prohibited by the Eleventh Amendment to the Constitution of the United States.

Counsel for plaintiff admits that Article V, Section 20, of the Constitution of Arkansas prohibits a suit against the state of Arkansas in any of her courts and this has been held to prohibit a suit against a state in the courts of the United States. If, therefore, the defendant's contention that a suit against a county is a suit against the state, suits against a county in Arkansas could not be maintained either in the courts of Arkansas or in the federal courts of Arkansas.

■ That the contention of defendants is not sound is evidenced by the fact that suits against counties have been consistently entertained by the state courts of Arkansas, and by the federal courts. See, for example, Nevada County v. Williams, 72 Ark. 394, 81 S.W. 384; State ex rel. Nevada County v. Hicks, 48 Ark. 515, 3 S.W. 524;

St. Louis National Bank v. Marion County, 72 Ark. 27, 79 S.W. 791; Rolfe v. Spybuck Drainage District No. 1, 101 Ark. 29, 140 S.W. 988; Chicot County, Arkansas v. Sherwood, 148 U.S. 529, 13 S.Ct. 695, 37 L.Ed. 546; Shappiro v. Goldberg, 192 U. S. 232, 24 S.Ct. 259, 48 L.Ed. 419.

Having reached the conclusion that the federal district court in Arkansas had jurisdiction to hear and determine the suit on its merits, the judgment of dismissal is reversed and the cause is remanded for further proceedings in conformity to this opinion.