**GRADY COUNTY, GEORGIA, Appellant,**
v.
**Imogene Wright DICKERSON, Appellee.**
**No. 17045.**

United States Court of Appeals
Fifth Circuit.
June 30, 1958.

Rehearing Denied Sept. 17, 1958.

E. J. Summerour, Paul Miller, Eugene Cook, Atlanta, Ga., Sol Altman, Thomasville, Ga., Lamar Murdaugh, Asst. Atty. Gen., Ariel V. Conlin, John E. Hogg, Deputy Asst. Attys. Gen., Altman & Johnson, Thomasville, Ga., for appellant.

T. H. Vann, Roy M. Lilly, Alexander, Vann & Lilly, Thomasville, Ga., J. Willis Conger, Conger & Conger, Bainbridge, Ga., for appellee.

Before RIVES, JONES and BROWN, Circuit Judges.

JONES, Circuit Judge.

Donald Thomas Dickerson, the husband of the appellee, was driving his automobile through Grady County, Georgia, over U. S. Highway No. 84, also known as State Route 38, on the afternoon of August 6, 1955. There had been an unusually heavy rain. The rain slacked off from heavy to moderate. As the car approached a bridge over Brumbley Creek it went out of control and collided with an abutment on the left side of the bridge. Dickerson was thrown from the car and killed. The decedent's widow, residing in Louisiana and basing Federal jurisdiction on diversity of citizenship, sued Grady County under the Georgia statute known as the defective bridge law.[1] She alleged that the County had negligently permitted the bridge and the approach to it to be and remain in a bad state of repair, and that its negligence was the direct and proximate cause of her husband's death.

The highway upon which the fatal accident occurred was a State-aid road which the State Highway Department was under a duty to maintain under the laws of Georgia.[2] The statute imposes upon the State Highway Department the duty to defend suits against counties where the cause of action has its origin on a highway which the State has taken over.[3] Grady County vouched in the State Highway Department and it, acting in the name of Grady County, filed a motion to dismiss and an answer. By the motion to dismiss it was asserted that the court was without jurisdiction. In challenging the jurisdiction of the court, it was contended in the district court and is here contended that under the Georgia statutes the county was only a nominal defendant with the State Highway Department being, in reality, the

---

1. "* * * Provided, however, that in every case the county shall be primarily liable for all injuries caused by reason of any defective bridges, whether erected by contractors or county authorities. The term 'bridges' in this section shall be defined as a structure erected to afford unrestricted vehicular traffic over an obstruction in the public highway of the State, including rivers, streams, ponds, lakes, bays, ravines, gullies, railroads, public highways and canals; the term bridge as defined in this section shall include the approaches to the structure previously defined within 50 feet of either end of said structure except where the bridge itself measures 100 feet or more and in said event within 100 feet of either end of said structure." Georgia Code, § 95–1001.

2. Georgia Code, § 95–1701 et seq.

3. "The State Highway Department shall defend all suits and be responsible for all damages awarded against any county under existing laws, whenever the cause of action originates on highways, jurisdiction over which shall have been assumed by said Highway Department under the terms of this law. Any county sued may vouch said Highway Department to defend such litigation, by furnishing said Highway Department with a notice to defend such suit, to which said notice shall be attached a copy of the petition served on said county. Said notice shall be given to the State Highway Department at least 10 days prior to the return day of the term at which said suit must be answered. The State Highway Department shall have the right and authority to adjust and settle in the name of such county and on its own behalf any claim for damages for which the State Highway Department may be ultimately liable under the terms of this section." Georgia Code, § 95–1710.

defendant in the cause. The State Highway Department urged in the district court and here urges that it is the State of Georgia which has not consented to be sued in cases of this kind except in its own courts. The Eleventh Amendment to the United States Constitution is relied upon to protect the exclusive sovereign jurisdiction of the Georgia courts in cases of this kind.

On this jurisdictional question we are furnished with a precedent from the Supreme Court of Georgia. In Schwarcz v. Charlton County, 211 Ga. 923, 89 S.E. 2d 881, it was held that where the State Highway Department was vouched in to defend a suit against a county in an action such as the present litigation, the Department was not a party to the suit even though it was required to defend for and in the name of the county and to answer for any judgment that might be rendered against the county. From the opinion we quote:

> "After the State Highway Department was served with notice of the pendency of the suit against the county, when it came into court to defend the suit it had the right, in the name of the county, to file any and all defensive pleadings to the suit that the county would have had the right to file. Not being subject to being made a party to the suit, it cannot defend the action in its own name and raise issues which the county could not raise. If at the time of filing of the suit the court had jurisdiction over the county as a party defendant, such jurisdiction was not ousted by the filing of a plea to the jurisdiction by the State Highway Department or the county, on the ground that the court had no jurisdiction over it. Jurisdiction is determined as to those who are the real or actual parties to the suit, and not by one who is not a party though he may be bound ultimately to respond to the judgment rendered in the proceeding." 211 Ga. 923, 927, 89 S.E.2d 881, 884.

Where the legislature of the state has imposed a duty upon counties and has provided for actions against counties to enforce liability for breaches of such duty, the state may not deprive the courts of the United States of the jurisdiction which it has under the Constitution and laws of the United States to decide cases where enforcement of such liabilities is sought. Covington County, Ala. v. Stevens, 5 Cir., 1919, 256 F. 328. Since the county is subject to suit in a Federal court [4] and, since the State Highway Department, as held in the Schwarcz case, supra, cannot raise issues which the county could not raise, it follows that the appellant must fail in its attack on Federal jurisdiction. Neither the State of Georgia nor its agency, the State Highway Department, is a party and the Eleventh Amendment has no application.

By the answer filed by the State Highway Department for and in the name of Grady County, the allegations as to negligence were denied, and the allegations that the decedent's death resulted from the condition of the bridge were denied. The bridge measurement was such that the approach within 100 feet of the structure was regarded as a part of it under Georgia Code, § 95–1001. The case was tried before a jury. There was one eye witness to the accident who testified. This was Jimmie Wood. He testified that he was driving a laundry truck along the highway and observed Dickerson's car behind him. The rain slackened some and Wood rolled down his window and signaled Dickerson to pass. The bridge was a little less than a mile away. Dickerson passed. Wood estimated Dickerson's speed at not over 45 miles per hour. Wood testified that at a point later measured and found to be 674 feet from the bridge, the Dickerson car hit some water in a dip in the highway, "bobbled to the left of the road, the center of the car not passing over the center line, and back to the right, and straightened back up." The witness continued, "Within about 300—somewhere

4. Lincoln County v. Luning, 133 U.S. 529, 10 S.Ct. 363, 33 L.Ed. 766.

around 350 foot of the bridge he hit another one [puddle of water]. The car bobbled back to the left and then back to the right, and in coming back to the right it came over and scraped the guard rail, pulled back on to the road, hit some water, was picked—looked like just picked the front end of the car up and set it around to the left and headed right into the bridge." Elaborating further, he said that after hitting the guard rail, the Dickerson car pulled back on the road about 115 feet from the bridge and continued on its course until it hit another puddle in a depression in the road "about 40 or 50 foot" from the bridge, whereupon "the car was thrown to the left of the road" and hit the bridge. Wood was about 700 feet from the bridge when Dickerson hit it. He estimated the speed of the Dickerson car at about 45 miles per hour. Witnesses who were not at the scene at the time of the accident estimated the speed at 60 miles per hour, at not over 50 miles per hour, and between 25 and 35 miles per hour.[5] There was evidence showing that the shoulders near the bridge were higher than the pavement and that water had collected and stood on the pavement after a heavy rain.

At the close of the plaintiff's case the defendant moved for an involuntary dismissal. This motion was denied. The defendant moved for a directed verdict after both sides had rested and this motion was denied. The jury returned a verdict for $10,000 and judgment was given for that amount. The defendant then moved for judgment non obstante veredicto or, in the alternative, for a new trial. This motion was also denied. The denials of these motions are separately specified as error. The County insists that the facts, viewed in a light most favorable to the plaintiff widow, demonstrate that the cause of the accident was not the bridge nor its approach within a distance of a hundred feet. As the County analyzes the evidence, and insists it cannot be otherwise regarded, it

was shown that Dickerson's car went out of control 674 feet from the bridge, remained out of control at a point 350 feet from the bridge, was still out of control when it scraped the guard rail, and that Dickerson never regained control. If the County's factual inferences are correct, the cause of the fatal accident had its origin more than a hundred feet from the bridge, and this is so, the County says, whether the cause was a defective highway or negligent driving by the decedent, or both.

It is not here asserted that any evidence was improperly omitted or excluded. It is not contended that there was any error in giving or refusing instructions to the jury. The only question, aside from jurisdiction, goes to the sufficiency of the evidence. The facts shown, the County insists, were such that reasonable men could not have found that the death of the decedent was the direct and proximate result of a defective bridge.

The testimony exhibited in the record is, in some material respects, conflicting. The uncontradicted testimony is such that different inferences might be drawn from it. We see no useful purpose to be served in extending our review of the evidence. The case was typically a case for a jury. The conflicts presented by the evidence have been resolved by the jury's verdict. The evidence was such that the jury could reasonably have found that the Dickerson's car was under control by him at the time it encountered the puddle of water 40 to 50 feet from the bridge proper. The evidence also justified a finding that the puddle of water was permitted to accumulate by reason of the County's negligence in the maintenance of the highway which, under the statute, was treated as a part of the bridge. So we say that the evidence sustains the verdict. Whether we would draw different inferences or reach a different conclusion is not material. For these propositions no extensive citations of author-

5. In the absence of special hazards requiring lower speeds, the statutory daylight speed limit for rural areas is 60 miles per hour. Georgia Code, § 68–1626.

ity are required. A statement of the rule and citations to some of the precedents may be found in Great American Indemnity Co. v. Rose, 5 Cir., 1957, 242 F.2d 269.

The judgment appealed from has our approval and is affirmed.

RIVES, Circuit Judge (concurring generally and specially).

I concur, and would state an additional reason for my opinion that the Eleventh Amendment does not, in this case, prevent a federal court from acquiring jurisdiction. It is settled that the immunity of a state from suit in a federal court is a personal privilege which may be waived. Clark v. Barnard, 1883, 108 U.S. 436, 447, 2 S.Ct. 878, 27 L.Ed. 780. Such a waiver is not lightly to be inferred, but a "* * * clear declaration of a state's consent to suit against itself in the federal court on *fiscal claims* is required." (Emphasis supplied.) Kennecott Copper Corp. v. State Tax Commission, 1946, 327 U.S. 573, 577, 66 S.Ct. 745, 747, 90 L.Ed. 862. See also, Ford Motor Co. v. Department of Treasury, 1945, 323 U.S. 459, 463, 65 S.Ct. 347, 89 L.Ed. 389, and Great Northern Life Ins. Co. v. Read, 1944, 322 U.S. 47, 54, 64 S.Ct. 873, 88 L.Ed. 1121. Each of those three cases was a suit for refund of taxes paid the state. Ordinarily, federal courts sitting in a state are deemed to be courts of that state, but that must be made particularly clear, "when we are dealing with the sovereign exemption from judicial interference in the vital field of financial administration." Great Northern Life Ins. Co. v. Read, supra, 322 U.S. at page 54, 64 S.Ct. at page 877, and see the dissenting opinion in Kennecott Copper Corp. v. State Tax Commission, supra, 327 U.S. at page 581, 66 S.Ct. at page 749. The present suit is a simple tort action where the reasons for denying federal jurisdiction are not so cogent as those existing in suits for refund of state taxes.

Assuming arguendo that, in substance, the State Highway Department is the real defendant in this case, the history and terms of the Georgia legislation, I think, clearly indicate an intention to waive its immunity from suit in a federal court. The bridge in question was constructed subsequent to the Act of the General Assembly of Georgia of 1888, page 39, incorporated into the Code of Georgia of 1933 as section 95–1001 and quoted in pertinent part in footnote 1 to the main opinion. From the enactment of the Act of 1888 to 1919, the county alone was liable for damages from the defective construction or maintenance of a public bridge. No possible doubt existed that the county could have been sued in a federal court. Lincoln County v. Luning, 1890, 133 U.S. 529, 10 S.Ct. 363, 33 L.Ed. 766; Chicot County v. Sherwood, 1893, 148 U.S. 529, 13 S.Ct. 695, 37 L.Ed. 546; Port of Seattle v. Oregon & W. R., 1921, 255 U.S. 56, 71, 41 S.Ct. 237, 65 L.Ed. 500.

Since the enactment of the Act of 1919, Georgia Laws, 1919, page 242 et seq., Code §§ 95–1701 et seq., the county's liability to suits for damages by reason of a defective bridge remains unaffected as to purely county roads, and as to bridges taken into the State-aid system the county is still permitted to be the defendant of record to the lawsuit, and primarily liable, but is required to vouch in the State Highway Department to defend and to be ultimately liable for any damages rendered. There can be no reasonable contention but that a county can now be sued in a federal court for damages arising from a defective bridge on a purely county road. As to a bridge taken into the State-aid system, the State Highway Department is made liable in the same manner as and even under the name of the county. Schwarcz v. Charlton County, 211 Ga. 923, 89 S.E.2d 881, 884. Its liability is enforceable by suit against the county, and the intent seems clear to me that such suits can be maintained in the same courts as theretofore, including the federal courts. In my opinion, therefore, if the State Highway Department is considered as the real defendant in this case, its immunity to suit in a federal court has been waived.