M. Diane KOKEN, Insurance Commissioner of the Commonwealth of PA, et al.

v.

VIAD CORP.

No. CIV.A.03–5975.

United States District Court,
E.D. Pennsylvania.

March 1, 2004.

Joseph C. Crawford, Brian J. Slipakoff, Wolf Block Schorr & Solis-Cohen, Philadelphia, PA, for Plaintiff.

George M. Vinci, Jr., Tina L. Colman, Spector, Gadon & Rosen, PC, Philadelphia, PA, for defendants.

## MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

In October of 2003, the Insurance Commissioner of the Commonwealth of Pennsylvania ("the Commissioner"), M. Diane Koken, in her official capacity as Liquidator of Reliance Insurance Company ("Reliance"), filed a complaint in the Commonwealth Court of Pennsylvania to recover a sum of money that Defendant Viad Corp. ("Viad") received from Reliance. Based on diversity of citizenship, Viad removed the action to federal court under 28 U.S.C. § 1441. Before me is Commission-

er's motion to remand the case back to the Commonwealth Court.

## I. Facts

- Viad was insured under a Lloyd's of London Blanket Crime Insurance Policy ("the Policy") for losses relating to certain criminal acts.
- Reliance was a 25% participant in the Policy, meaning Reliance was responsible for 25% of the claim.
- On February 14, 2000, Viad reported a claim to the insurance companies for losses for certain criminal acts covered under the Policy.
- On December 6, 2000, Viad and Reliance, and the other Policy participants, executed an Interim Payment and Assignment Agreement ("the Agreement"). The Agreement provided for the interim payment of $7,899,918.77 to Viad. Reliance's portion of the interim payment owed to Viad was $1,974,979.69.
- On January 29, 2001, for reasons unrelated to this case, the Pennsylvania Insurance Department put Reliance under regulatory supervision.
- On February 5, 2001, Reliance paid Viad $1,974,979.69, its portion of the interim payment.
- In early May of 2001, Reliance and the other policy participants agreed to a final settlement of Viad's claim.
- On May 29, 2001, Reliance was placed in rehabilitation by the Pennsylvania Insurance Department and the Commissioner was appointed the Rehabilitator of Reliance.
- On or about June 6, 2001, Reliance and Viad, along with the other policy participants, executed a General Release and Assignment Agreement ("the Release"). Under the Release, Viad agreed to ac-

cept the additional sum of $1,000,000 in exchange for releasing the policy participants from any further obligation on the claim.

- On July 17, 2001, Reliance paid its share of the Release payment, $250,000, to Viad.[1]
- On October 3, 2001, the Commonwealth Court of Pennsylvania granted the Commissioner's petition to place Reliance in liquidation and appointed the Commissioner as Liquidator of Reliance.
- On October 2, 2003, the Commissioner, in her official capacity as Liquidator of Reliance, brought suit in the Commonwealth Court of Pennsylvania to recover the payment of $1,974,979.68[2] from Reliance to Viad. The Commissioner claims that under the insurance laws of Pennsylvania, the payment made to Viad by Reliance is a preferential payment that she, as the Liquidator, can void.
- On October 29, 2003, Viad removed the case to federal court based on diversity of citizenship.
- On November 28, 2003, the Commissioner filed a motion to remand, but did not request a stay.

## II. Discussion

The Commissioner filed the instant motion to remand the case back to the Commonwealth Court of Pennsylvania on two grounds. The Commissioner first claims that abstention principles support remand. Second, the Commissioner claims that because the Commonwealth Court has exclusive jurisdiction over all of Reliance's assets, this case was improperly removed. I will deny the Commissioner's motion to remand.

---

**1.** The Complaint only demands judgment for the $1,974,979.68, not the $250,000.

**2.** Defendants claim the amount of the payment was $1,974,979.69. The Commissioner seeks recovery of an amount one cent less than that.

## A. Abstention

 Federal courts have a strict duty to exercise the jurisdiction that Congress has conferred upon them. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). "'[T]he courts of the United States are bound to proceed to judgment and to afford redress to suitors before them in every case to which their jurisdiction extends. They cannot abdicate their authority or duty in any case in favor of another jurisdiction.'" *Chicot County v. Sherwood*, 148 U.S. 529, 534, 13 S.Ct. 695, 37 L.Ed. 546 (1893) (citations omitted). The obligation of federal courts to exercise the jurisdiction given them, however, is not absolute. *Quackenbush*, 517 U.S. at 716, 116 S.Ct. 1712. There are some "extraordinary and narrow exception[s] to the duty of the District Court to adjudicate a controversy properly before it." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). The abstention doctrines evolve from these exceptions. The Commissioner argues that in this case, the principles of abstention dictate a remand to the Commonwealth Court.

 Because the facts in *Quackenbush* are closely analogous to the case before me, *Quackenbush* is therefore controlling. In *Quackenbush*, the California Insurance Commissioner ("California Commissioner"), acting as a trustee over the assets of the Mission Insurance Company ("Mission"), filed a state court action against Allstate Insurance Company ("Allstate"). Among other remedies, the California Commissioner sought contract and tort damages. Allstate removed the action to federal court on diversity grounds and filed a motion to compel arbitration under the Federal Arbitration Act. In response to Allstate's removal, the California Commissioner argued that the case should be remanded to state court, under the abstention principles announced in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).[3] Specifically, the California Commissioner argued that the district court should abstain from hearing the case because its resolution in federal court might interfere with California's regulation of the Mission insolvency. In support of abstention, the California Commissioner argued that the issue of whether Allstate could offset its own contract claims against the California Commissioner's recovery was a question of state law pending before the state courts in a contemporaneous Mission insolvency case. Citing the state's overriding interest in the uniform and orderly regulation of insurance insolvencies and the danger that liquidations could be undermined by inconsistent rulings from the federal and state court, the district court concluded that a *Burford* abstention was appropriate and remanded the case to state court. The Ninth Circuit, however, vacated the district court's decision on the grounds that a *Burford* abstention was inappropriate in an action for damages. In *Quackenbush*, the Supreme Court upheld the Ninth Circuit's ruling, concluding that when the action is at law, abstention principles limit a federal court's possible course of action. Specifically, when the remedy sought is legal rather than equitable, a district court may not abstain under

---

**3.** Under the *Burford* doctrine, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies where timely and adequate state-court review is available and the case presents "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar, or if its adjudication in a federal forum would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Quackenbush*, 517 U.S. at 726–27, 116 S.Ct. 1712 (internal citations omitted).

*Burford* and remand the complaint to state court. When the relief sought is equitable in nature, however, abstention principles allow a federal court to stay the action, dismiss the suit, or remand it to state court. 517 U.S. at 730, 116 S.Ct. 1712.

Because *Quackenbush* limits the availability of a remand under *Burford* to actions in equity, I must first determine whether the instant action is an action at law or equity. No Supreme Court, Third Circuit, or Pennsylvania case squarely addresses whether an action commenced by Pennsylvania's statutory liquidator to recover an alleged preferential payment constitutes an action at law or an action in equity. There is, however, federal law that is instructive. In *Schoenthal v. Irving Trust Co.*, the Supreme Court held that an action by a trustee in bankruptcy to recover as a voidable preference a sum of money paid by the bankrupt to a creditor prior to bankruptcy, where no injunctive or equitable relief was sought, was an action at law. 287 U.S. 92, 95, 53 S.Ct. 50, 77 L.Ed. 185 (1932). *See also Atlas Roofing Co. v. Occupational Safety and Health Review Comm'n*, 430 U.S. 442, 454, n. 11, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977) (referencing voidable preferences as actions at law). The Supreme Court has also held that actions to recover preferential or fraudulent transfers are actions at law. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 43–48, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). Finally, the Supreme Court has held that proceedings to recover the amount of a payment made is an action at law. *See California v. Latimer*, 305 U.S. 255, 261, 59 S.Ct. 166, 83 L.Ed. 159 (1938).

Although no Pennsylvania state cases address this issue, cases from other states interpreting their respective state law uniformly follow the doctrine of the Supreme Court. For instance, it has been held that an action seeking a money judgment against a defendant for transfers made for the purpose of hindering or defrauding creditors is an action in law. *McCormick v. Union Farmers State Bank*, 48 N.D. 834, 187 N.W. 421, 422 (1922). In another context it has been held that when an adequate remedy at law is available, and when there is no feature of the case uniquely within the province of a court of equity, a mere money demand cannot be recovered by an equity suit. *Maxwell v. Davis Trust Co.*, 69 W.Va. 276, 71 S.E. 270, 271 (1911). Likewise, under New York law, when a trustee in bankruptcy seeks a money judgment solely to recover an amount alleged to have been paid as a preference, the action is one at law. *Cohen v. Small*, 120 A.D. 211, 214, 105 N.Y.S. 287 (N.Y.App.Div.1907). In sum, the overwhelming authority instructs that a demand for a money judgment for a voidable preference is an action at law.

In the instant case, the Commissioner seeks to recover an alleged preferential payment of $1,974,979.68 made by Reliance to Viad. Because this is an action at law, a remand is unavailable under *Quackenbush*. Therefore, the Commissioner's claim that *Burford* provides a basis for remand of the instant action fails.[4] *Quackenbush* also teaches that a court should not consider a stay under *Burford* unless the party seeking abstention specifically requests a stay.

---

4. This conclusion is consistent with the purposes behind allowing a defendant to remove an action to federal court in certain circumstances. This allows an out-of-town defendant to have a trial on the merits of a state-law question free from local interests or prejudice. 13b Charles Alan Wright & Arthur Miller& Edward H. Cooper, *Federal Practice and*

*Procedure* § 3601 (2d ed.1984). In the instant action, an arm of the state of Pennsylvania seeks judgment against an Arizona corporation based on Pennsylvania state law. If the instant case were to be adjudicated by the Pennsylvania Commonwealth Court, the Commissioner could be perceived to enjoy a significant "home court" advantage.

As was the case in *Quackenbush*, the Commissioner in the instant case did not seek a stay. Therefore, because the Commissioner did not request a stay, it will not be considered.[5]

### B. Improper Removal

The Commissioner argues that this action was improperly removed to federal court because the Commonwealth Court has exclusive jurisdiction over the liquidation proceedings.

■■■ While state and federal courts generally must not interfere with or try to restrain each other's proceedings, an exception has been made in cases where a court has custody of property. In such instances, the Supreme Court has held that the state or federal court once having custody of such property has exclusive jurisdiction to proceed thereafter. *Princess Lida v. Thompson*, 305 U.S. 456, 466, 59 S.Ct. 275, 83 L.Ed. 285 (1939). Therefore, a federal court generally may not exercise its jurisdiction to disturb or affect the possession of property in the custody of a state court. *Markham v. Allen*, 326 U.S. 490, 494, 66 S.Ct. 296, 90 L.Ed. 256 (1946). This is known as the *Princess Lida* doctrine. The *Princess Lida* doctrine applies

when: (1) the nature of the litigation in both fora is *in rem* or *quasi in rem*, and (2) the relief sought requires that the second court exercise control over the property in dispute and such property is already under the control of the first court. *Princess Lida*, 305 U.S. at 466, 59 S.Ct. 275.[6] Because, the requirements of neither (1) nor (2) have been met in this case, the *Princess Lida* doctrine is not applicable.

■■■ To decide whether *Princess Lida* is applicable, a court must first determine whether an action is *in rem* or *in personam*. If a court's jurisdiction is based on its authority over the defendant's person, the action is *in personam*. If jurisdiction is based on the court's power over property within its territory, the action is *in rem* or *quasi in rem*. *Shaffer v. Heitner*, 433 U.S. 186, 199, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). Where the relief sought is a money judgment only, the action is *in personam*. *Kline v. Burke Constr. Co.*, 260 U.S. 226, 228, 43 S.Ct. 79, 67 L.Ed. 226 (1922). *See also Mandeville v. Canterbury*, 318 U.S. 47, 49, 63 S.Ct. 472, 87 L.Ed. 605 (1943) (where the judgment sought is recovery of money, the action is

---

**5.** The Third Circuit's decision in *Feige v. Sechrest* does not change the reading of *Quackenbush* with respect to the case before me. 90 F.3d 846 (3d Cir.1996).

**6.** In *Princess Lida*, trustees of a fund filed an account in a Pennsylvania Court of Common Pleas, thus giving that court jurisdiction over the trust *quasi in rem* under Pennsylvania statutes. Subsequently, the beneficiaries of the trust sued the trustees in federal court alleging mismanagement of the trust funds and asking that the trustees be removed and be made to account and repay the losses of the estate. The Court of Common Pleas issued an order enjoining the beneficiaries from prosecuting their case. The Pennsylvania Supreme Court affirmed the order, but on that same day, the federal district court issued an opinion upholding its jurisdiction notwith-

standing the proceedings in the Common Pleas Court. The United States Supreme Court granted the writ of certiorari from the decision of the Pennsylvania Supreme Court. The United States Supreme Court affirmed the order of the Common Pleas court. The United States Supreme Court held that when the trustees filed their account with the state court, the jurisdiction of the state court attached and that court was allowed to exercise jurisdiction over all matters that fell within the supervisory control of the administration of the estate. The Supreme Court concluded that because the state court could not effectively exercise the jurisdiction vested in it without a substantial measure of control over the trust funds, the federal court was properly enjoined. *Princess Lida*, 305 U.S. 456, 59 S.Ct. 275.

*in personam* ). In *United States v. Bank of New York & Trust Co.*, 296 U.S. 463, 56 S.Ct. 343, 80 L.Ed. 331 (1936), the Supreme Court distinguished between *in rem* and *in personam* actions in a situation analogous to *Princess Lida.* In *Bank of New York*, the government claimed that the suits were *in personam* . Rejecting this contention, the Supreme Court held the suits were *in rem* because:

> These suits are not to enforce a personal liability but to obtain possession of the respective funds. The suits are not merely to establish a debt or a right to share in property, and thus to obtain an adjudication which might be had without disturbing the control of the state court. *Compare Waterman v. Canal–Louisiana Bank Co.*, 215 U.S. 33, 44–46, 30 S.Ct. 10, 54 L.Ed. 80; *Riehle v. Margolies*, 279 U.S. 218, 223, 224, 49 S.Ct. 310, 73 L.Ed. 669. Complainant demands that the depositaries account and pay over to the complainant, as "the sole and exclusive owner," the entire funds in their hands. Thus the object of the suits is to take the property from the depositaries and from the control of the state court, and to vest the property in the United States to the exclusion of all those whose claims are being adjudicated in the state proceedings.

*Bank of New York*, 296 U.S. at 468, 56 S.Ct. 343.

In this quote, the Supreme Court characterizes *in personam* actions as actions that "enforce a personal liability," or "establish a debt or a right to share in property, and thus obtain an adjudication which might be had without disturbing the control of the state court." In this case, the Commissioner seeks monies owed to it by Viad. Viad seeks a ruling that it is entitled to keep the payment it received from Reliance. The instant action is therefore similar to those actions characterized by the Supreme Court as *in personam* actions.

The Commissioner is seeking a money judgment against Viad. *See* discussion *infra* Part A. There is no dispute that the Commonwealth Court has *in rem* jurisdiction over Reliance's assets as a result of the liquidation order. *See Blackhawk Heating & Plumbing Co. v. Geeslin*, 530 F.2d 154, 158 (7th Cir.1976) (appointment of a receiver and institution of liquidation proceedings constitutes an action *in rem* ). The instant dispute, however, is not for the recovery of a specific piece of Reliance's property. If the Commissioner is victorious in the underlying action, Viad will not be returning the same check or dollar bills it received from Reliance. The payment received by Viad from Reliance is not a sequestered nor distinguishable piece of property. The $1,974,979.68 the Commissioner seeks, unlike an identifiable piece of property, is fungible. Because the instant action does not involve a specific piece of property, but rather a money judgment, the action is *in personam*. *Cf. Koken v. P.L.D. Denis, Esq. et. al*, no. 03–2154 (M.D.Pa. Feb. 6, 2004). In order for abstention to be appropriate under the *Princess Lida* standard, the litigation in both the state and federal fora must be *in rem* or *quasi in rem*. Because the action before me is *in personam*, the first prong of the *Princess Lida* standard has not been met.

■ The second prong of the *Princess Lida* standard requires that the relief sought in the second court necessitates that the second court exercise control over the property in dispute and that such property is already under the control of the first court. A federal court, however, may exercise its jurisdiction to adjudicate rights in such property if the final judgment does not interfere with the state court's possession except to the extent that the state court is bound by the judgment to recognize the right adjudicated by the

federal court. *Markham*, 326 U.S. at 494, 66 S.Ct. 296. There is no argument that Reliance's assets are in the custody of the state court. This court, however, need not exercise control over Reliance's assets to effectuate judgment in the instant case. All that must be determined is whether the payment made to Viad is a voidable preferential payment entitling Koken to a money judgment in the amount of the payment. Under *Markham*, I can exercise jurisdiction because my judgment in this case would not interfere with the state court's possession of the Reliance assets. The only impact of my decision would be to bind the state court to my determination of whether or not Reliance's payment to Viad was a voidable preference. Therefore, the second prong of *Princess Lida* has not been met. Because the *Princess Lida* doctrine does not apply, Commissioner's claim that the Commonwealth Court has exclusive jurisdiction over Reliance's preference claims fails.

Neither abstention principles nor the *Princess Lida* doctrine justify my shirking my "unflagging obligation to exercise" jurisdiction. *Colorado River*, 424 U.S. at 821, 96 S.Ct. 1236. I therefore decline to remand.

### *ORDER*

AND NOW, this 1st day of March 2004, upon consideration of Plaintiff's Motion for Remand to State Court (docket # 3) and the Defendant's Response (docket # 6), it is **ORDERED** that Plaintiff's Motion for Remand is DENIED.