NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

JUL 5 2017

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| KEEVEN DEMERE ROBINSON, | No. 14-56831 |
| Petitioner-Appellant, | |
| v. | D.C. No. 2:13-cv-05389-JVS-KK |
| CHRISTIAN PFEIFFER, | MEMORANDUM* |
| Respondent-Appellee. | |

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted May 9, 2017
Pasadena, California

Before: PREGERSON and FRIEDLAND, Circuit Judges, and LASNIK,** District
Judge.

Keeven Robinson appeals the district court's denial of his habeas corpus

petition. Robinson argues that the California Court of Appeal unreasonably

applied *Berger v. United States*, 295 U.S. 78 (1935); *Donnelly v. DeChristoforo*,

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Robert S. Lasnik, United States District Judge for the
Western District of Washington, sitting by designation.

416 U.S. 637 (1974); and *Darden v. Wainwright,* 477 U.S. 168 (1986), when it held that there was no prosecutorial misconduct during his trial and that, if there was, it was not prejudicial. Robinson also argues that his defense counsel provided ineffective assistance to the extent that he failed to object to the alleged misconduct. The California courts and the district court rejected these arguments. Although we are troubled by some of the prosecutor's conduct, under the strict standard of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), we cannot say that the California Court of Appeal unreasonably applied the law or unreasonably determined the facts. As a result, we affirm the denial of habeas relief.

## I. Prosecutorial Misconduct

Robinson first argues that the prosecutor violated his due process rights by arguing inconsistent theories of guilt at his first and second trials. It was not unreasonable for the state courts to conclude that the prosecutor's theories were consistent because in both theories Robinson personally committed the robberies. *See Haynes v. Cupp*, 827 F.2d 435, 439 (9th Cir. 1987).

Moreover, the Court of Appeal was not unreasonable in concluding that, even if the theories were inconsistent, Robinson failed to show prejudice. Although the jury could have inferred that an unseen accomplice took the gun and escaped after Torres's robbery, a finding of prejudice based on such a conclusion

2

would be reliant on several assumptions about the thinking of the jury, which in turn would be drawing several inferences, unsuggested by the prosecutor, from Martinez's testimony. Such a chain of inferences and assumptions would run counter to the Supreme Court's direction in *Donnelly* to "not lightly infer that . . . a jury, sitting through lengthy exhortation, will draw [the most damaging] meaning from the plethora of less damaging interpretations." 416 U.S. at 647.

Robinson next argues that the prosecutor committed misconduct by intentionally eliciting testimony about prejudicial evidence that the judge had already excluded. But even if introducing evidence of the modus operandi and crack pipe represented misconduct, Robinson cannot show that the Court of Appeal unreasonably applied the law in holding that there was no prejudice, particularly when the prosecutor did not emphasize that evidence and defense counsel cross-examined Detective Romero to highlight the inconsistencies in his testimony about the modus operandi. *See Rupe v. Wood*, 93 F.3d 1434, 1444 (9th Cir. 1996). And, as Robinson concedes, the mention of the crack pipe was not prejudicial because it did not add anything significant to his extensive testimony about his crack cocaine use.

Robinson also contends that the state court unreasonably applied *Berger* and *Darden* when it held that no misconduct was apparent when the prosecutor asked four argumentative questions, objections to which the trial court sustained. Again,

3

even if the questions were misconduct, the Court of Appeal was not unreasonable in concluding that Robinson did not show prejudice because sustained objections had remedied any potential prejudice. Even if another court could justifiably have found the prosecutor's comments prejudicial, the California Court of Appeal did not unreasonably apply *Berger* or *Darden* in concluding otherwise. *See Hein v. Sullivan*, 601 F.3d 897, 916 (9th Cir. 2010) (applying *Darden* in part by concluding that sustained objections and cautionary instructions mitigated any prejudice caused by a prosecutor's improper comments).

Robinson next contends that the prosecutor made a number of improper and prejudicial remarks during his closing arguments. He argues that the state court unreasonably determined that these remarks were not misconduct. Once again, even if Robinson is correct that these comments were misconduct—and we agree with him that some of them were—his argument still fails on the issue of prejudice. *See Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (reversing grant of habeas petition after comparing improper closing argument to the closing argument in *Darden*, which was "considerably more inflammatory than the one at issue here," and which the Supreme Court held was not prejudicial). The prosecutor's comments here were more akin to those in *Parker* than those in *Darden*. As a result, the Court of Appeal did not unreasonably apply *Darden* in concluding that the prosecutor's statements were not prejudicial.

Robinson argues that the state court unreasonably applied *Berger* in holding that the cumulative errors did not violate due process. To the extent Robinson argues that the cumulative error judgment was an unreasonable application of *Berger*, his argument fails because the misconduct in this case was less flagrant than that in *Berger*, not to mention that in *Darden*. The state court could reasonably have interpreted any misconduct here as falling below the level of *Darden*, where the Supreme Court held that there was no denial of due process. Moreover, to the extent Robinson's cumulative error argument rests on a comparison between the first and second trials, many of the instances of alleged misconduct would have required the jury to draw inferences that were not necessarily obvious in order for them to be prejudicial. *See Donnelly*, 416 U.S. at 647. And there were other material differences between the first trial and second trial that were probably more likely to account for the differences in outcome than was any alleged misconduct. For example, whereas the victims in the first trial differed in whether they thought Robinson was the attacker and the degree of confidence they had in that assessment, in the second trial both victims unequivocally stated that Robinson was the robber.

## II. Ineffective Assistance of Counsel

Robinson makes a subsidiary argument that to the extent his counsel failed to object to any prosecutorial misconduct, he provided ineffective assistance.

Review of ineffective assistance habeas claims requires double deference, because the court must give "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013) (citing *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011)). Because many of the instances of misconduct were not sufficiently inflammatory to cause prejudice and because defense counsel effectively responded to other instances in his closing argument, Robinson's conclusory argument of ineffective assistance does not overcome AEDPA's doubly deferential standard.

**AFFIRMED.**

*Robinson v. Pfeiffer*, No. 14-56831
PREGERSON, J., dissenting:

I dissent because I believe the California Court of Appeal unreasonably

applied *Berger v. United States*, 295 U.S. 78 (1935), when deciding that the

cumulative effect of the prosecutor's misconduct did not violate Petitioner Keeven

Robinson's federally protected due process rights.

This is "not . . . a case where the misconduct of the prosecuting attorney was

slight or confined to a single instance, but one where such misconduct was

pronounced and persistent . . . ." *Id.* at 89. First, although the trial judge made

evidentiary rulings excluding evidence of a crack pipe and 20 uncharged robberies,

the prosecutor extracted that precise evidence from the mouths of two police

officers during trial. Specifically, the trial judge told the prosecutor that the crack

pipe found in Robinson's shoe upon his arrest was "not going to be introduced."

Nonetheless, the prosecutor asked Officer Aiello about the crack pipe when he

examined him at trial. Further, when the prosecutor asked the trial judge if he

could discuss the similarities between Robinson's two robbery charges and 20

additional robberies, the trial judge ruled, "I won't allow it." Nevertheless,

Detective Romero referred to modus operandi evidence from some of the

uncharged robberies in his testimony. At a sidebar that followed, the trial judge

told the prosecutor, "Basically, your detective did not follow the court's

instructions."

Second, the prosecutor asked Robinson argumentative questions, including whether he read the transcript from his first trial "to make sure [he] testif[ied] to the same thing?" The prosecutor also asked Robinson whether he knew that it was important to have an alibi.

Third, the prosecutor made a number of improper remarks during his closing arguments. One such remark implied that a key witness—one of the robbery victims' wives—must have been lying when she testified that Robinson was not the robber because she had hired an attorney. *See Bruno v. Rushen*, 721 F.2d 1193, 1194 (9th Cir. 1983) ("[I]n no situation in a criminal trial . . . do we feel the mere act of hiring an attorney is probative in the least of the guilt or innocence of defendants.").

Fourth, the prosecutor improperly vouched for Detective Romero's credibility. *See United States v. Weatherspoon*, 410 F.3d 1142, 1147 (9th Cir. 2005) (explaining that vouching is forbidden because a jury "may be inclined to give weight to the prosecutor's opinion . . . instead of making the independent judgment of credibility to which the defendant is entitled") (quoting *United States v. McKoy*, 771 F.2d 1207, 1211 (9th Cir. 1985)). The prosecutor stated, "Detective Romero is a fine, fine law enforcement officer." The prosecutor also told the jury, "Any day ladies and gentlemen, I'll put these two witnesses before you, and I submit to you Detective Romero is credible and the defendant is not."

Although the trial judge sustained many of defense counsel's objections and instructed the jury not to consider the attorneys' arguments as evidence, "the situation was one which called for a stern rebuke and repressive measures . . . ." *Berger*, 295 U.S. at 85. Indeed, when "reviewing for cumulative error, the court must review all errors preserved for appeal . . . . Even if a particular error is cured by an instruction, the court should consider any traces which may remain." *United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1993) (internal quotation marks and citations omitted). I cannot ignore the traces of prejudice left by the prosecutor's repeated misconduct in this case.

Moreover, "where the government's case is weak, a defendant is more likely to be prejudiced by the effect of cumulative errors." *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996). Such is the case here.

This case turned on identification, yet the witnesses could only provide police with vague descriptions of the suspect before some of them identified Robinson in a one-man field lineup. On the other hand, one robbery victim consistently told police and testified that Robinson was *not* the robber. This helps explain why, in the first trial, Robinson was acquitted of two robbery charges (the "Placentia" and "Mejia" robberies), and why the jury hung in favor of acquittal as to the remaining two robberies (the "Wooden" and "Torres" robberies).

The evidence of Robinson's innocence is compelling in light of the prosecution's timeline. Mr. Wooden was robbed at 6:30 p.m. on December 27, 2008. Mr. Mejia was robbed at 8:20 p.m. that night, and Mr. Torres was robbed at 8:25 p.m. Officers responding to the ensuing 911 calls stopped Robinson not once, but *twice* before 8:33 p.m. Despite being stopped relatively far away from the site of the final two robberies, Robinson was not perspiring, he was not out of breath, and he carried no gun or robbery proceeds.

A prosecutor's "obligation . . . in a criminal prosecution is not that [he] shall win a case, but that justice shall be done." *Berger*, 295 U.S. at 88. When prosecutors forgo this duty, AEDPA's demand for deference "makes a mockery of the careful boundaries between Congress and the courts that our Constitution's Framers believed so essential to the prevention of tyranny." *Crater v. Galaza*, 508 F.3d 1261, 1270 (9th Cir. 2007) (Reinhardt, J., dissenting).

I cannot say that the California Court of Appeal reasonably applied *Berger* when it discounted the cumulative prejudicial effect of the prosecutor's misconduct in this case.

Respectfully, I dissent.